UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE  DIVISION

| | | |
|---|---|---|
| CHRIS TINDELL, CYNTHIA GRAVES, | ) | |
| and GLENN TINDELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 3:09-cv-00159-SEB-WGH |
| vs. | ) | |
| | ) | |
| EVANSVILLE-VANDERBURGH | ) | |
| SCHOOL CORPORATION and | ) | |
| EVANSVILLE-VANDERBURGH-POSEY | ) | |
| SPECIAL SERVICES COOPERATIVE, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ADDRESSING MOTIONS FOR PRELIMINARY INJUNCTIVE RELIEF**

This cause is before the Court on competing motions for preliminary injunction: on December 3, 2009, Defendants Evansville-Vanderburgh School Corporation and Evansville-Vanderburgh-Posey Special Services Cooperative ("Defendants") filed a Motion for Preliminary Injunction Lifting the Stay [Docket No. 13]; and, on December 21, 2009, Plaintiffs Chris Tindell, Cynthia Graves, and Glenn Tindell ("Plaintiffs") filed a Motion for Preliminary Injunction [Docket No. 16], seeking enforcement of the statutory stay.  For the reasons detailed in this entry, Defendants' Motion is <u>DENIED</u>; and Plaintiffs' Motion is <u>GRANTED</u>.

***Factual Background***

This cause of action arises from the efforts of Plaintiffs Cynthia Graves and Glenn Tindell to seek relief under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq. and related Indiana statutes for alleged violations of their son, Chris Tindell's, right to a free appropriate public education ("FAPE"). Chris Tindell ("Chris") is an eighteen year old who suffers from autism spectrum disorder. Cynthia Graves and Glenn Tindell became his legal guardians when he turned eighteen in December 2008. Compl. ¶ 8.

Chris was first identified as qualifying for special education and related services in 1998 under the label of "learning disability of written expression." Compl. ¶ 13. He received special education services for this condition from 2002-2003. Id. These services were discontinued, however, in the 2003-04 school year, at which time Chris ceased attending school in the classroom and began homebound instruction. Id.[1]

Despite his parents' attempts to reintegrate him into the public school system, Chris continued to receive his education at home for several years. During this period, his parents arranged at their own expense for various psychiatric, emotional, and occupational evaluations, all of which indicated that Chris had a form of autism spectrum disorder. Defendants did not identify him as having this disorder until April 11, 2008.

―――――――――――――――

[1]Also in 2004, Chris was found to have an "emotional handicap." This, and the aforementioned condition, are both recognized as disabilities under the relevant code sections. See §§ 511 Ind. Admin. Code 7-41; 7-41-12(a)(1)(B).

Compl. ¶¶ 17-19.

In June 2008, Defendants placed Chris in the Autism Spectrum Behavioral Learning Environment program at the Gibault Home in Terre Haute, Indiana ("Gibault School"), pursuant to 511 Ind. Admin. Code 7-41-7(u).  Tr. of Hrg. at 385, 395. According to the Complaint, Chris's parents and the Case Conference Committee agreed, in April 2008, to place Chris at the Gibault School with the understanding that he would receive treatment there until his nineteenth birthday.  Plaintiffs further aver that the school's special education director assured them that Chris would not graduate based solely on academic credits but only when he was "ready."  Compl. ¶ 22.

In February 2009, the School informed Chris's parents that he had acquired sufficient academic credits at the Gibault School and therefore that he would graduate with a high school diploma.  Concerned that, despite this accumulation of credits, Chris was not actually prepared for graduation, Chris's parents filed a request for a due process hearing on March 2, 2009, claiming that Defendants had not provided Chris with a FAPE consistent with state and federal law requirements.  Compl. ¶ 25.  Although Chris had graduated from high school, he remained at the Gibault School, pursuant to the mandatory "stay-put" provision of the IDEA.[2]  Prior to the hearing, Defendants filed a motion with the Independent Hearing Officer seeking to end Christopher's stay-put placement at the school.  Defendants' motion was denied, and the matter proceeded to a due process

---

[2]The "stay-put" placement is a vehicle of both Indiana and federal law.  See 511 Ind. Admin. Code 7-45-7(u); 20 U.S.C. § 1415(j).

hearing in June 2009.

After a five-day hearing and the submission of post-hearing briefs, the Hearing Officer found that Defendants had provided a FAPE to Chris, and that Defendants therefore had no obligation to provide further services.  Def.'s Ex. B at 18-20, ¶ 3-7 (finding that Chris had received "services in excess of what this hearing officer believes [Defendants] are legally required to provide").  This decision was upheld by the Indiana Board of Special Education Appeals.

On November 9, 2009, Plaintiffs filed the present appeal, challenging those administrative decisions.

## *Legal Analysis*

### I.   *Motions for Injunctive Relief*

The motions for preliminary injunction in this case are competing and overlapping: Defendants request that the Court lift Chris's stay-put placement, which was upheld over Defendants' objection by the Hearing Officer, whereas Plaintiffs seek to have the statutory stay-put provision enforced.[3]

---

[3]Although the motions before the Court are for preliminary injunction, we note that a full merits review of the administrative decisions of the type in this case proceeds as follows: "In any action brought under this paragraph, the court (i) shall receive the records of the administrative proceeding; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate."  20 U.S.C. § 1415(i)(2)(C); see also Heather S. by Kathy S. v. Wis., 125 F.3d 1045, 1053 (7th Cir. 1997).

A.     *Defendants' Request for Injunctive Relief*

Defendants contend that they should not be obligated to continue to fund Chris's placement at the Gibault School or any other special education placement because Chris received a high school diploma on May 19, 2009 and is therefore no longer eligible for publicly provided special education services.

Under Indiana law, public school corporations are required to provide a FAPE to any qualifying student unless the student graduates with a high school diploma, or at the conclusion of the school year in which the student becomes twenty-two years old.  511 Ind. Admin. Code 7-33-2(b).  Similarly, the relevant federal regulations provide: "The obligation to make FAPE available to all children with disabilities does not apply with respect to the following: . . . Children with disabilities who have graduated from high school with a regular high school diploma."  34 C.F.R § 300.102(a).

When a student and his parents challenge the termination of his education benefits, however, the following stay-put provision of the IDEA is triggered: "during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child."  20 U.S.C. § 1415(j).  Indiana Law restates this statutory stay: "the student shall remain in the student's current educational placement during a due process hearing, administrative appeal, or judicial proceeding, unless the parties agree otherwise . . . ."  511 Ind. Admin. Code 7-45-7(u).

"The stay-put provision has been interpreted as imposing an automatic statutory

injunction, like the automatic stay in bankruptcy." Casey K. ex rel Norman K. v. St.

Anne Community High Sch. Dist. No. 302, 400 F.3d 508, 511 (7th Cir. 2005) (citations

omitted).  The Seventh Circuit has held, however, that the stay may be lifted in at least

one circumstance:

> We think that the stay-put provision does indeed cease to operate when a child
> reaches the age of 21. . . . Once the child reaches the age at which he no longer
> is entitled to the protection of the Act, the stay-put provision, which is
> intended to prevent the child from losing benefits to which he is entitled, loses
> its rationale.  Its continued application would confer benefits beyond the limits
> set by Congress.

Bd. of Edu. of Oak Park & River Forest High Sch. Dist. 200 v. Ill. Bd. of Edu., 79 F.3d

654, 657 (7th Cir. 1996) (contrasting the stay-put provision with a claim for

compensatory education, which is a benefit that may extend beyond the age of 21).

Defendants contend that, because the relevant statutes treat a student's graduation from

high school the same as reaching the age of twenty-one (or twenty-two in the case of

Indiana law), we should extend the Oak Park exception to the stay-put to encompass the

present facts.

According to Defendants, the Oak Park reasoning applies to the present case

because Chris's receipt of a regular high school diploma ends his eligibility for services,

and permitting him to stay at the Gibault School or a similar facility would confer benefits

in excess of those granted by the IDEA and Indiana law.  The Seventh Circuit has never

extended Oak Park to lift the stay-put for a student who has graduated high school, and

Defendants cite only one decision that has done so.  See Sammons v. Polk County Sch.

Bd., 2006 WL 82606, at * (M.D. Fla. Jan. 12, 2006).  Although Sammons, which is not

binding on this Court, hypothetically extended the Oak Park reasoning to encompass a

student who had received a high school diploma, its holding does not support Defendants'

position.  The Sammons Court decided *not* to lift the statutory stay, clearly reasoning that

the exception is triggered only when the student's ineligibility is undisputed.  See id.[4]

> It is clear that Oak Park does not apply to the present facts for the same reason:

> The purpose of the stay-put provision is to give the child's parents the choice of keeping the child in his existing program *until their dispute with the school authorities is resolved*.  Once the child reaches the age at which he no longer is entitled to the protection of the Act, the stay-put provision, which is intended to prevent the child from losing benefits to which he is entitled, loses its rationale.

79 F.3d at 659-60 (emphasis added).  The Oak Park Court based its decision on the fact

that reaching age twenty-one is an outer bound on eligibility, and, implicitly, on the fact

that the parties in that case did not dispute the student's age.  Had there been such a

dispute, upholding the stay-put would have reinforced that provision's purpose of

maintaining the student's placement until all disputes were resolved and his entitlement

was conclusively foreclosed.

> Unlike the plaintiffs in Oak Park, Chris's parents have contested the validity and

good faith of Defendants' decision to graduate their son.  Indeed, they have conformed

---

[4]The court reasoned as follows: "In this case, however, Plaintiffs challenged Defendant's decision to graduate A.S., and even though the Court found that A.S. met the graduation requirements in its order on Defendant's motion for summary judgment, the challenge is not finally resolved until the Court enters a final judgment on the graduation challenge."  Sammons, 2006 WL 82606, at *3.

their current appeal to the Seventh Circuit's advice, as stated in <u>Oak Park</u>: "parents who have a well-founded concern that the school district is employing such Machiavellian tactics" may make a motion for a preliminary injunction as a matter of equitable relief. <u>Oak Park</u>, 79 F.3d at 660.  Plaintiffs request for injunctive relief has done just that.

The language of the stay-put provision is abundantly clear: "the student shall remain in the student's current educational placement during a due process hearing, administrative appeal, or judicial proceeding, unless the parties agree otherwise."  511 Ind. Admin. Code 7-45-7(u).  We conclude that the existence of a dispute in the present matter as to Chris's eligibility differentiates this case from <u>Oak Park</u>, and that extending that exception would run contrary both to clear precedent and to the statutory purpose of the IDEA and the related Indiana statute because this is precisely the sort of "judicial proceeding" for which the stay-put provision was designed.[5]  Accordingly, this Court shall enforce the mandatory stay-put provision of the IDEA, and Defendants' Motion for Preliminary Injunction shall be <u>denied</u>.

B.    *Plaintiffs' Request for Injunctive Relief*

Typically, the stay-put has the effect of maintaining the student's exact current

---

[5]Defendants also contend that Chris's lack of entitlement serves as a "compelling reason" to dissolve the "stay put" provision.  <u>See</u> <u>Casey K. v. St. Anne Cmty. High Sch. Dist. No. 302</u>, 400 F.3d 508, 513 (7th Cir. 2005).  However, not only does this again ignore that Chris's ineligibility is disputed, it also fails to recognize that a "compelling reason" is generally more serious than a student's ineligibility for continued benefits.  <u>See</u> <u>Honig v. Doe</u>, 484 U.S. 305, 325, 328 (1988).

placement.  Because the Gibault School will close in 2010, however, Plaintiffs seek

injunctive relief to permit transfer of Chris to a comparable facility, namely, the College

Internship Program in Bloomington, Indiana.

      "The stay-put provision substitutes for the traditional preliminary injunction

requirements."  Farzana K. v. Indiana Dept. of Educ., 2009 WL 3642748, at *5 (N.D. Ind.

Oct. 30, 2009) (citing Casey K., 400 F.3d at 511) ("The stay-put provision has been

interpreted as imposing an automatic statutory injunction, like the automatic stay in

bankruptcy.").  Congress "confer[red] broad discretion on [a] court" enforcing this

provision to determine what is "'appropriate' in light of the purpose of the Act."  Sch.

Comm. of Burlington v. Massachusetts, 471 U.S. 359, 369 (1985); 20 U.S.C. §

1415(j)(2)(C)(iii).  The IDEA contains a number of stated purposes, including:

> (1)(A)    to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living; [and]
>
> (B)    to ensure that the rights of children with disabilities and parents of such children are protected.

20 U.S.C. § 1400.

      The broad discretion afforded by Congress under the IDEA includes the

conversion of an exact "stay-put" placement into a "stay-put" placement at a comparable

facility.  See John M. v. Board of Educ. of Evanston Tp. High School Dist. 202, 502 F.3d

708, 714 (7th Cir. 2007) (noting the Seventh Circuit's hesitancy to be rigid in defining the

"educational placement" portion of the stay-put provision).  Thus, when "rigid adherence" to the exact educational program becomes "an impossibility," as is the case here because the Gibault School will soon close, the school district must "provide educational services that approximate the student's old [Individualized Education Program] as closely as possible."  Id. at 714-15.

Chris's parents assert that they have carefully researched alternatives to the Gibault School and that the College Internship Program in Bloomington is, in their view, the most suitable option.  Defendants rejoin that the curriculum offered there does not qualify as a "comparable placement" because of the differing goals of an education at the Gibault School, where a student can obtain a high school diploma, and an education at the College Internship Program, where the ultimate goal is typically a college degree.

Defendants contend further that the College Internship Program is inappropriate because it amounts to a college education, which the obligatory provision of a FAPE does not include.  In support of this contention, Defendants cite federal regulations defining a FAPE to include "appropriate preschool, elementary school, or secondary school" and stating that "the obligation to make FAPE available to all children with disabilities does not apply with respect to . . . [c]hildren with disabilities who have graduated from high school with a regular high school diploma."  34 C.F.R § 300.17; 34 § C.F.R 300.102(3)(i).  It is not clear from these regulations or the submissions of the parties, however, that the education Chris would receive at the College Internship Program is inappropriate.  Moreover, the latter regulation, excluding a school's obligations to a

student who has graduated from high school, does not necessarily apply in this case, given that the validity of Chris's graduation remains a matter of dispute between the parties.

Furthermore, Defendants have proposed no alternative to the College Internship Program. When a "court [is] presented with only one option, it [is] not required to locate another school that would satisfy the least restrictive alternative requirement based on the entire pool of schools available, but rather [is] simply to determine whether that one available choice would provide an appropriate education for" the student. Bd. of Educ. of Murphysboro Comm. Unit Sch. Dist. No. 186 v. Illinois State Bd. of Educ., 41 F.3d 1162, 1168 (7th Cir. 1994). Thus, the sole inquiry for the Court at this juncture is whether the College Internship Program would provide an appropriate education for Chris during the pendency of these judicial proceedings.

Although Defendants are correct that a FAPE is typically available only at a high school, courts may, pursuant to their equitable discretion, move beyond a "college" label in the interest of the child. As one court reasoned,

> [t]he District, focusing on the "college" label . . ., argues that [the student] should be denied the relief he seeks, because he is only entitled to receive a FAPE at a high school. The older [the student] gets, however, the less likely it becomes that an actual high school, even a residential one, will consider accepting him. The denial of a FAPE over an extended period does constitute harm, and the longer that denial continues, the more irreparable it becomes.

Sabatini v. Corning-Painted Post Area Sch. Dist., 78 F.Supp.2d 138, 143 (W.D.N.Y. 1999) (citing Murphy v. Arlington Central Sch. Dist. Bd. of Educ., 1999 WL 980164, at

11

*4 (S.D.N.Y. Oct. 28, 1999); see also David G. v. Council Rock Sch. Dist., 2009 WL
3064732, at *14 (E.D. Pa. Apr. 7, 2009).  The case at bar presents similar considerations,
especially given that Chris is over nineteen, the relief sought is preliminary, and Chris's
continuing educational placement is mandated by statute.

   We therefore conclude that it is appropriate to place Chris in the College
Internship Program pending a final review of the Hearing Officer's decision.  Should
Plaintiffs ultimately prevail, it is not clear whether the facility will provide an appropriate
permanent placement for Chris, given the limits of a school district's obligation to
provide a FAPE.[6]  However, the stay-put provision mandates that he be placed in a
comparable facility, and Defendants have proposed no alternative. Accordingly, given the
"practical considerations" presented in this case, and the IDEA's purpose of ensuring that
"the rights of children with disabilities and parents of such children are protected," we
hold that establishing the College Internship Program as Chris's placement for the
duration of these proceedings is appropriate under the circumstances.  See T.H. v. Bd. of
Educ. of Palestine Community Consolidated Sch. Dist., 1998 WL 850819, at * (N.D. Ill.
Dec. 3, 1998).[7]

---

[6]For this reason, the parties should develop the record more clearly as to the
appropriateness of the College Internship Program, as well as to propose alternative programs,
should Chris ultimately be entitled to the permanent relief Plaintiffs seek.

[7]Although the holding in this case is founded upon the automatic statutory stay, which
supersedes the traditional preliminary injunction factors, Bd. of Educ. of Community High Sch.
Dist. No. 218, Cook Co., Illinois v. Illinois State Bd. of Educ., 103 F.3d 545 (7th Cir. 1996), the
Court finds, in the alternative, that Plaintiffs have satisfied the traditional elements required for
(continued...)

Given the time exigencies inherent in this case, the attorneys for the parties are directed to promptly meet and confer towards reaching an agreed case management plan and to schedule an expedited conference call with the Magistrate Judge to establish a schedule for reaching a final resolution of the merits of this dispute.

1.      Nominal Bond

Federal Rule of Civil Procedure 65(c) provides that "[n]o restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper . . . ." Fed.R.Civ.P. 65.  However, "[i]mplicit in the maintenance of the status quo is the requirement that a school district continue to finance an educational placement" pending final resolution of the dispute. Pardini v. Allegheny Intermediate Unit, 420 F.3d 181, 190 (3d Cir. 2005) (citation omitted).  Accordingly, because the purposes of the IDEA would be undermined by requiring Chris's parents to

--------------------------------------------------

[7](...continued)
the issuance of a preliminary injunction.  The grant of injunctive relief is appropriate if the moving party is able to demonstrate: (1) a reasonable likelihood of succeeding on the merits; (2) irreparable harm if preliminary relief is denied; and (3) an inadequate remedy at law.  Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States of America, Inc., 549 F.3d 1079, 1086 (7th Cir. 2008).  Plaintiffs are likely to succeed on the merits of their case because the record demonstrates that Chris may have been wrongfully denied benefits, and because his parents oppose the validity of his graduation. The irreparability of the harm to Chris if the injunction does not issue is clear because the Gibault School is scheduled to close soon, leaving Chris with no current placement and no adequate remedy at law to rectify his situation.  The harm that Chris would suffer if he were forced to leave school outweighs the harm that Defendants will suffer by the requirement that they pay the costs of the pendant placement.  Finally, the public interest is served by the preliminary injunction because it ensures the continuing effectiveness of the IDEA.

post a significant bond to insure Defendants' costs, see Bd. of Educ. of Oak Park & River Forest High Sch. Dist. No. 200 v. Illinois State Bd. of Educ., 10 F.Supp.2d 971, 982 (N.D. Ill. 1998), the Court orders that a nominal bond of $10 be posted with the Clerk of the Court.

## II.  Conclusion

For the foregoing reasons, Defendants' Motion for Preliminary Injunction is DENIED, and Plaintiffs' Motion for Preliminary Injunction is GRANTED.

The Court hereby PRELIMINARILY ORDERS Defendants, Evansville-Vanderburgh School Corporation and Evansville-Vanderburgh-Posey Special Services Cooperative, to pay all future costs associated with Chris Tindell's placement and enrollment at the College Internship Program in Bloomington, Indiana, until this matter is finally resolved.  Plaintiffs are ordered to post a $10 bond with the Clerk of the Court.

Such PRELIMINARY INJUNCTION shall take effect at the time of the issuance of this Order, and shall remain in effect and extend until further order of the Court or, in any event, no later than a final ruling on the merits.

IT IS SO ORDERED.

Date: ___02/10/2010_____

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Jean Marie Blanton
ZIEMER STAYMAN WEITZEL & SHOULDERS
jblanton@zsws.com

14

Allyson Rebecca Breeden
ZIEMER STAYMAN WEITZEL & SHOULDERS
abreeden@zsws.com

Mitchell M. Pote
LAW OFFICE OF MITCHELL M. POTE
mitchell.pote@gmail.com

Patrick A. Shoulders
ZIEMER STAYMAN WEITZEL & SHOULDERS
pshoulders@zsws.com

Richard Krall, Deputy Clerk
U.S. District Court
Finance Office

15